[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 20-14721

_____

LUZ ELENA MEYERS,

                                                            Petitioner,

*versus*

U.S. ATTORNEY GENERAL,

                                                            Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
Agency No. A087-252-574

_____

Before JORDAN, LUCK, and LAGOA, Circuit Judges.

LUCK, Circuit Judge:

Luz Meyers, a native and citizen of Colombia, petitions for review of the denial of her motion to reopen removal proceedings under 8 U.S.C. section 1229a(b)(5)(C). Meyers, in her motion, argued that the immigration judge should reopen proceedings because she "did not receive notice" of her removal hearing. 8 U.S.C. § 1229a(b)(5)(C)(ii). After considering the evidence, the immigration judge denied the motion to reopen because Meyers had not met her burden to show she did not receive notice of her removal hearing. Because the immigration judge's decision was not arbitrary or capricious, we deny Meyers's petition for review.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Meyers first entered the United States in 1998 on a B2 tourist visa. In 2008, while renting a house on Pecan Run Radial in Ocala, Florida, Meyers married a United States citizen who moved in with her.

That same year, Meyers's husband petitioned the Department of Homeland Security on her behalf to grant her permanent resident status. The petition listed the Pecan Run address as Meyers's current address and the one where she "intend[ed] to live." The department conditionally approved the petition in 2009. But Meyers failed to petition to remove the conditions, so the department terminated her permanent resident status in 2011.

In June 2013, the department sent Meyers a notice to appear at her removal proceedings. The notice to appear was sent by regular mail to the Pecan Run address and charged Meyers as removable. It ordered her to appear before an immigration judge on a date and time "to be set." It also warned that if Meyers didn't appear, the immigration judge may order that she be removed in her absence.

Two weeks later, the immigration court sent Meyers—also by regular mail to the Pecan Run address—a notice of hearing. The notice of hearing set Meyers's removal hearing for July 11, 2013, at 8:30 A.M. in Orlando, Florida. Like the notice to appear, it warned that if Meyers failed to appear, the hearing could be held without her. It also warned that if the hearing was held in her absence an order of removal could be entered against her.

The hearing was held as scheduled on July 11, but Meyers didn't appear. The immigration judge conducted the hearing in Meyers's absence, or "in absentia," under 8 U.S.C. section 1229a(b)(5)(A), and ordered that Meyers be removed to Colombia. The immigration judge found that: (1) Meyers "was provided written notification of the time, date[,] and location" of the hearing; (2) Meyers was "provided a written warning that failure to attend th[e] hearing . . . would result in the issuance of an order of removal in [her] absence"; and (3) the department "submitted documentary evidence relating to [Meyers] which established the truth of the factual allegations" charged in the notice to appear. Like the notices, the removal order was mailed to the Pecan Run address.

Meyers did not appeal the 2013 removal order to the Board of Immigration Appeals. Instead, in August 2019—six years after she was ordered removed—Meyers filed a motion to reopen removal proceedings under 8 U.S.C. section 1229a(b)(5)(C). Meyers argued she was "eligible to reopen . . . on three grounds," but only the first ground—lack of notice—is relevant to her petition.

Meyers argued that "[w]hen [a] [c]ourt considers a motion to reopen, the central inquiry is whether or not the alien actually received notice" of the removal hearing. Meyers submitted an affidavit stating that she didn't receive notice of her removal hearing. She said that both she and her ex-husband left the Pecan Run address in 2010 after they separated. So, Meyers explained, she "no longer resided at [the Pecan Run] address" when the department mailed the notice to appear and notice of hearing because she had moved in with a friend. Meyers admitted that she never provided the department with an updated mailing address. But she said that she didn't provide an updated address because her original attorney told her "to not file anything." When Meyers retained new counsel in 2019, that attorney requested Meyers's records from the department and discovered the order of removal.

The department opposed reopening removal proceedings. It responded that Meyers couldn't "on the one hand fail to update her address as required, and on the other hand use that same failure to claim a lack of notice."

The immigration judge denied Meyers's motion to reopen proceedings. The immigration judge acknowledged that an in

absentia removal order can be rescinded at any time under 8 U.S.C. section 1229a(b)(5)(C)(ii) if the movant shows she didn't receive a written notice satisfying 8 U.S.C. section 1229(a). The immigration judge concluded, however, that Meyers did not satisfy her burden of showing she lacked notice.

Under *In re M-R-A-*, 24 I. & N. Dec. 665, 671 (B.I.A. 2008), the immigration judge explained, a "properly addressed notice . . . is presumed to have been received by [an] addressee" if it is "sent [by] regular mail according to normal office procedures." The immigration judge also explained that the presumption is rebuttable and weaker than the one that applies when notice is sent by certified mail. Under this framework, the immigration judge first found that the weaker presumption applied to Meyers's motion. The immigration judge cited evidence that the Pecan Run address was Meyers's mailing address—specifically, Meyers's own affidavit acknowledged she rented the house on Pecan Run, and she listed that house's address when applying for residency. The immigration judge also cited how "[Meyers] concede[d] that the [notice to appear], notice of hearing, and in absentia order were sent to her [Pecan Run] address." The immigration judge then found that Meyers didn't overcome the presumption. The immigration judge reasoned that Meyers conceded that the notice to appear and notice of hearing were mailed to the Pecan Run address, that Meyers "by her own admission" never notified the department that she moved out of the Pecan Run house, and that Meyers produced no evidence that the notice documents were returned as undeliverable by the post office.

Meyers appealed the immigration judge's order to the board. On appeal, Meyers acknowledged that a noncitizen "may be served with a [notice to appear] or [notice of hearing] by regular mail." And she acknowledged that the department did that here by mailing the notice to appear and notice of hearing to the Pecan Run address in 2013. But, Meyers pointed out, she provided the Pecan Run address to the department "years earlier." Thus, she contended, the department "did the same thing" here that the Immigration and Naturalization Service did in *In re G-Y-R-*, where the board concluded that "the entry of an in absentia order is precluded" if the noncitizen "did not receive the [n]otice to [a]ppear and the notice of hearing it contains." 23 I. & N. Dec. 181, 189–90 (B.I.A. 2001) (en banc).

The board affirmed the immigration judge's order "without opinion." Meyers then petitioned for our review.

## STANDARD OF REVIEW

Because the board summarily affirmed the immigration judge's order "without opinion," we review the immigration judge's reasoning as if it were the board's. *Dragomirescu v. U.S. Att'y Gen.*, 44 F.4th 1351, 1353 (11th Cir. 2022). We review for an abuse of discretion the denial of a motion to reopen removal proceedings, *Li v. U.S. Att'y Gen.*, 488 F.3d 1371, 1374 (11th Cir. 2007), and that review is "limited" to determining whether the denial was "arbitrary or capricious," *Zhang v. U.S. Att'y Gen.*, 572 F.3d 1316, 1319 (11th Cir. 2009) (citation omitted). We review de novo any underlying legal conclusions. *Li*, 488 F.3d at 1374.

## DISCUSSION

Meyers argues that her case should have been reopened because it is "undisputed" that she didn't receive written notice, citing her affidavit's statement that she didn't live at the Pecan Run address when notice was mailed. Under those circumstances, she contends, the board's *In re G-Y-R-* decision required reopening proceedings. We disagree. Because the immigration judge's finding that Meyers failed to satisfy her burden of showing she never received notice was not arbitrary or capricious, we conclude the immigration judge didn't commit an abuse of discretion by denying her motion to reopen the removal proceedings.[1]

We begin by describing the relevant statutory framework. The Immigration and Nationality Act establishes "an intricate set of procedures" for removing noncitizens. *Dragomirescu*, 44 F.4th at 1354 (citing 8 U.S.C. §§ 1229, 1229a). The removal process "often

---

[1] The government argues that, under 8 U.S.C. section 1252(d)(1), we cannot review Meyers's "*Matter of G-Y-R-* claim" because she didn't exhaust it and exhaustion is jurisdictional. The Supreme Court has since clarified that section 1252(d)(1)'s exhaustion requirement is not jurisdictional; instead, it is a claim processing rule. *See Santos-Zacaria v. Garland*, 598 U.S. 411, 419 (2023). We assume without deciding that Meyers satisfied the exhaustion requirement because her petition fails on the merits. *See Donnelly v. Controlled Application Rev. & Resol. Program Unit*, 37 F.4th 44, 56 (2d Cir. 2022) ("[W]e may assume that [claim processing] rules are satisfied to resolve the case on other grounds."); *Ponce v. Garland*, 70 F.4th 296, 300–02 (5th Cir. 2023) (acknowledging that the petitioner did not raise an issue before the board in a motion to reconsider, but rejecting the petitioner's argument on the merits because section 1252(d)(1) is not jurisdictional).

includes multiple hearings before an immigration judge," and the noncitizen "generally has a right to be present" at these hearings. *Dacostagomez-Aguilar v. U.S. Att'y Gen.*, 40 F.4th 1312, 1315 (11th Cir. 2022) (citations omitted). But if the noncitizen fails to appear, the immigration judge can order that she be removed in absentia if she received "written notice" of the hearing as "required under paragraph (1) or (2) of [8 U.S.C.] section 1229(a)." 8 U.S.C. § 1229a(b)(5)(A); *see Dacostagomez-Aguilar*, 40 F.4th at 1315 ("[S]kipping a hearing does not strip the immigration court of its power."). "[W]ritten notice" is "sufficient for purposes of [section 1229a(b)(5)(A)]" if given "at the most recent address provided under section 1229(a)(1)(F)." 8 U.S.C. § 1229a(b)(5)(A).

Section 1229(a) refers to two kinds of written notice. *See id.* § 1229(a)(1)–(2). Either type of written notice may be given to the noncitizen "in person" or, "if personal service is not practicable, through service by mail." *Id.* § 1229(a)(1), (2)(A).

The first type of written notice is a "notice to appear." *Id.* § 1229(a)(1). "Akin to a charging document," a notice to appear informs the noncitizen of the factual allegations, the "obligation to keep [the department] apprised of any changes to [her] address," the "time and place at which [her] removal hearing will be held," and that—if she fails to appear—"the immigration judge can order [her] removed . . . in [her] absence." *Dragomirescu*, 44 F.4th at 1354 (citations omitted).

Although a notice to appear is sent to the noncitizen "in every removal case," the second type of written notice—a notice

of hearing—is only required if "the time or place of [the original] removal hearing . . . change[s]" or additional hearings are scheduled. *Id.* at 1354–55 (citing 8 U.S.C. § 1229(a)(2)); *see also Dacostagomez-Aguilar*, 40 F.4th at 1317. A notice of hearing contains the updated time or place of the hearing. *Dragomirescu* 44 F.4th at 1355. And, like a notice to appear, a notice of hearing informs the noncitizen that failing to appear may result in the immigration judge ordering removal in her absence. 8 U.S.C. § 1229(a)(2)(A)(ii).

If the noncitizen is ordered removed in absentia without written notice, there are two ways she can seek relief. Under the first option, she can directly appeal the removal order to the board under 8 C.F.R. section 1003.38(a). Or, under the second option, she may file a motion to rescind the removal order under 8 U.S.C. section 1229a(b)(5)(C).

The second option, section 1229a(b)(5)(C), allows for an in absentia removal order to "be rescinded . . . upon a motion to reopen," but only "if the alien demonstrates that [she] did not receive notice in accordance with paragraph (1) or (2) of section 1229(a)." *Id.* § 1229a(b)(5)(C)(ii). That means if the noncitizen missed "the original hearing" the burden is on her to show she did not receive a notice to appear as required by section 1229(a)(1). *Dacostagomez-Aguilar*, 40 F.4th at 1316–17 ("[Section 1229a(b)(5)(C)(ii)] keeps th[e] [removal] order in place unless an alien shows that he did not receive the required notice. . . . [T]he notice that matters is the notice for the hearing missed."). Or, if she missed "any

rescheduled . . . or additional hearing," she must show she did not receive a notice of hearing as required by section 1229(a)(2). *Id.*

Meyers chose the second option and moved to rescind her removal order under section 1229a(b)(5)(C)(ii). As Meyers acknowledged in her motion to reopen under that provision, "the central inquiry is whether or not [she] actually received notice."

*In re M-R-A-* controls that inquiry. *In re M-R-A-* "concern[ed] the standard to be applied and the evidence to be considered by an [i]mmigration [j]udge" when a noncitizen moves to reopen proceedings "claim[ing] that [she] did not receive" notice. 24 I. & N. Dec. at 667. The board held that "when a respondent seeks to reopen proceedings based on a claim of lack of receipt of notice," a "presumption of receipt" applies "to a [n]otice to [a]ppear or [n]otice of [h]earing sent by regular mail [if] the notice was properly addressed and mailed according to normal office procedures." *Id.* at 673 (noting that this presumption "is weaker than that accorded to notice sent by certified mail"). If the presumption applies, "the question to be determined is whether the respondent has presented sufficient evidence to overcome the . . . presumption." *Id.*

Under this framework, "all relevant evidence submitted to overcome the weaker presumption of delivery must be considered." *Id.* at 674. Relevant rebuttal evidence includes:

> (1) the respondent's affidavit; (2) affidavits from family members or other individuals who are knowledgeable about the facts relevant to whether notice was received; (3) the respondent's actions upon learning

of the in absentia order, and whether due diligence was exercised in seeking to redress the situation; (4) any prior affirmative application for relief, indicating that the respondent had an incentive to appear; (5) any prior application for relief filed with the [i]mmigration [c]ourt or any prima facie evidence in the record or the respondent's motion of statutory eligibility for relief, indicating that the respondent had an incentive to appear; [and] (6) the respondent's previous attendance at [i]mmigration [c]ourt hearings, if applicable.

*Id.* This list is nonexhaustive because "[e]ach case presents different facts and circumstances." *Id.* Immigration judges "are neither required to deny reopening if exactly such evidence is not provided nor obliged to grant a motion, even if every type of evidence is submitted." *Id.*

Because Meyers sought the same relief as the *In re M-R-A-* movant—rescinding a removal order based on a lack of notice—the immigration judge applied *In re M-R-A-*'s framework and found that Meyers failed to show she didn't receive notice. *See id.* at 666–67. The immigration judge's finding wasn't "arbitrary or capricious."[2] *See Zhang*, 572 F.3d at 1319. "[T]he hearing missed"

---

[2] We reject the government's argument that our decision in *Dominguez v. U.S. Attorney General*, 284 F.3d 1258 (11th Cir. 2002), controls. *Dominguez* addressed a due process claim and, as we've recently explained, "our statements [in *Dominguez*] about the . . . statutory [notice] requirements for in absentia removal were dicta." *Dragomirescu*, 44 F.4th at 1356 n.4.

was the July 11, 2013, 8:30 A.M. hearing, meaning "the notice that matters" is the notice of hearing because it set that date and time. *See Dacostagomez-Aguilar*, 40 F.4th at 1317. So, to reopen proceedings under section 1229a(b)(5)(C)(ii), Meyers had the burden to "demonstrate[] that [she] did not receive notice in accordance with paragraph . . . (2) of section 1229(a)." 8 U.S.C. § 1229a(b)(5)(C)(ii); *see Dacostagomez-Aguilar*, 40 F.4th at 1317–19. That's "a heavy burden." *Zhang*, 572 F.3d at 1319 ("[M]otions to reopen are disfavored, especially in removal proceedings." (citation omitted)); *see also Ali v. U.S. Att'y Gen.*, 443 F.3d 804, 813 (11th Cir. 2006).

The immigration judge's finding that Meyers did not meet her burden was not arbitrary or capricious. As the immigration judge explained, there was evidence Meyers resided at the Pecan Run house. Meyers rented that house after entering the United States and lived there with her ex-husband. She gave the department the Pecan Run address as her current address and the one where she intended to live when applying for residency status. When the department notified Meyers in 2009 that it conditionally approved the application, its notice listed the Pecan Run address as her address. Meyers never notified the department that she later moved out of the house. So, in 2013, when Meyers was charged as removable, three different documents were sent by regular mail and addressed to her at the Pecan Run house—a notice to appear, a notice of hearing, and the removal order. None of the three documents were returned as undeliverable by the post office. And Meyers did not challenge her removal order for six years.

Meyers argues that the immigration judge's application of *In re M-R-A-* was arbitrary and capricious because "[*In re*] *M-R-A-* has no bearing on the outcome of this case." Instead, she maintains, the "[immigration judge] was bound to apply [*In re*] *G-Y-R-* to reopen this case." Her "position is that [*In re G-Y-R-*] and [*In re*] *M-R-A-* apply to distinct situations and claims." She argues that under *In re G-Y-R-*, "the 'last address' or the 'most recent address' provided by the alien 'in accordance with subsection (a)(1)(F) [of section 1229]' will necessarily be an address arising from the alien's receipt of . . . the [n]otice to [a]ppear." *See* 23 I. & N. Dec. at 187–88 (citations omitted). She contends that, because notice here was "sent to the wrong address" under section 1229(a), *In re G-Y-R-* dictates that she can't be charged with receiving it. *In re M-R-A-*, she says, "supplies the analysis to determine 'whether a respondent has presented sufficient evidence to overcome the presumption'" of receipt.

We agree with Meyers that *In re G-Y-R-* and *In re M-R-A-* govern "distinct situations and claims." But *In re G-Y-R-* did not address a situation and claim like Meyers's.

*In re G-Y-R-* considered whether an immigration judge may enter a removal order in absentia in the first place if the respondent "ha[d] never been notified of the initiation of removal proceedings." *Id.* at 183. The Immigration and Naturalization Service had mailed a notice to appear to the respondent, but the post office returned the notice to the service as undeliverable. *Id.* at 182. Then, after the respondent failed to appear at her removal hearing, the

immigration judge found that she lacked notice of the hearing and terminated removal proceedings. *Id.*

The service appealed to the board, arguing that the immigration judge erred by terminating removal proceedings. *Id.* at 182–83. The immigration judge, the service contended, "should have . . . ordered the respondent removed in absentia" under section 1229a(b)(5)(A) because it attempted to deliver the notice to her "most recent address provided under section [1229](a)(1)(F)." *Id.* at 182–83, 185–86 (quoting 8 U.S.C. § 1229a(b)(5)(A)). The board rejected that argument, concluding that it was "proper for the [i]mmigration [j]udge to terminate proceedings." *Id.* at 192. The board explained that section 1229a(b)(5)(A) didn't authorize in absentia removal because, although "the [s]ervice mail[ed] the [n]otice to [a]ppear to the last address it ha[d] on file for the alien, . . . the record reflect[ed] that [she] did not receive the [n]otice to [a]ppear, and the notice of hearing it contain[ed]." *Id.*

This is not an *In re G-Y-R-* case because *In re G-Y-R-* addressed a different situation. There, the immigration judge denied the service's request for in abstentia removal because the notice to appear was never delivered to the respondent. *Id.* at 182. The respondent's notice to appear—which was the "only notice of the date, time, and place of her removal hearing"—was returned to the department by the post office as undeliverable. *Id.* at 183; *see also id.* at 182 ("We understand . . . that the respondent did not receive the [n]otice to [a]ppear because it was returned to the [s]ervice by the [p]ostal [s]ervice."); *id.* at 186 ("This case . . . involves constructive

notice in the form of *undelivered* written notice."); *id.* at 188 ("In this instance, the [n]otice to [a]ppear never reached the respondent, and the advisals were never conveyed."); *id.* at 192 ("The record clearly reflects that the [n]otice to [a]ppear never reached the respondent.").

Here, however, the immigration judge ordered in absentia removal after finding that Meyers (unlike the *In re G-Y-R-* respondent) received "written notification of the time, date[,] and location" of her removal hearing. Both a notice to appear and notice of hearing had been sent to Meyers's Pecan Run address by regular mail—where she admittedly lived and where she told the department she intended to live when applying for residency. She continued living there after the department conditionally approved her application, and she never told it that she moved elsewhere. And, critically, after the notices were sent to the Pecan Run address by regular mail, those documents were never returned as undeliverable. *See Mauricio-Benitez v. Sessions*, 908 F.3d 144, 149–51 (5th Cir. 2018) (concluding it wasn't an abuse of discretion for the immigration judge to apply the presumption of receipt because the notice of hearing wasn't returned as undeliverable); *Navarette-Lopez v. Barr*, 919 F.3d 951, 953–55 (5th Cir. 2019) (same, despite the noncitizen's affidavit "stat[ing] that she had moved from place to place" over the years). Unlike *In re G-Y-R-*, this is not a situation where we know the noncitizen did not receive the notice because the notice came back as undelivered.

This is also not an *In re G-Y-R-* case because *In re G-Y-R-* addressed a different claim. *In re G-Y-R-* involved the first option for challenging the immigration judge's in absentia removal decision. There, the service claimed on direct appeal that the respondent was removable in absentia *under section 1229a(b)(5)(A)*. *See* 23 I. & N. Dec. at 182–83. Under that provision, the service had the burden to establish that the petitioner received written notice satisfying section 1229(a)(1) or (2). *See* 8 U.S.C. § 1229a(b)(5)(A) (providing that an immigration judge shall proceed in absentia "if *the* [*s*]*ervice establishes* by clear, unequivocal, and convincing evidence that the written notice was . . . provided" (emphasis added)). Because the service did not satisfy its burden, the immigration judge found that sufficient notice wasn't provided and denied the service's request for removal (which the board affirmed). *In re G-Y-R-*, 23 I. & N. Dec. at 182, 192.

Here, on the other hand, Meyers brought a claim under the second option—*section 1229a(b)(5)(C)*—to rescind an in absentia removal order and reopen proceedings. Under the second option, the burden flips. Meyers was the one with the burden and she had to show that she lacked notice of her removal hearing. *See* 8 U.S.C. § 1229a(b)(5)(C)(ii) ("[A]n order [of removal] may be rescinded . . . upon a motion to reopen filed at any time *if the alien demonstrates* that the alien did not receive notice in accordance with paragraph (1) or (2) of section 1229(a) . . . ." (emphasis added)). *In re G-Y-R-* did not consider—because it involved a different claim—when a

20-14721                Opinion of the Court                17

movant like Meyers satisfies her burden to reopen proceedings. *See* 23 I. & N. Dec. at 183.[3]

---

[3] The dissenting opinion adds that the board's decision was arbitrary and capricious because the board did not follow its precedent in *In re Anyelo*, 25 I. & N. Dec. 337 (B.I.A. 2010). But Meyers never made this argument in her initial brief, and "we do not consider claims not raised in a party's initial brief." *APA Excelsior III L.P. v. Premiere Techs., Inc.*, 476 F.3d 1261, 1269 (11th Cir. 2007). Even if we did, *In re Anyelo* (like *In re G-Y-R-*) is not "factually . . . identical" to our case. In *In re Anyelo* (as in *In re G-Y-R-*), there was no dispute that the noncitizen did not get the notice: the evidence showed that the *In re Anyelo* respondent filed a change-of-address form with the post office. 25 I. & N. Dec. at 338; *see also Sun v. U.S. Att'y Gen.*, 543 F. App'x 987, 991 (11th Cir. 2013) ("[W]e have distinguished this case from *In re G-Y-R-* and [*In re*] *Anyelo* on the basis that the [notice to appear] in those cases was returned by the Postal Service, and the aliens in those cases could not be charged with notice."). Here, though, whether Meyers received notice was disputed. Her notice was not returned by the post office—it was delivered—and there's no evidence that Meyers told the government that she changed her address. *See Sun*, 543 F. App'x at 991 ("By contrast, the [notice to appear] was not returned by the Postal Service in this case, and [the petitioner] could properly be charged with receipt of the [notice to appear] and the [n]otice of [h]earing."). So the immigration judge properly applied *In re M-R-A-* to resolve the factual dispute.

The dissenting opinion makes four points in reply. First, it chides us for relegating the discussion of *In re Anyelo* to a footnote. But using a footnote to respond to a dissenting opinion puts us in good company. *See, e.g., Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508, 534–38 nn.10–14, 540–44 nn.16–19, 547–48 nn.21–22 (2023) (responding to a dissenting opinion in footnotes); *Biden v. Nebraska*, 143 S. Ct. 2355, 2368 n.3, 2371 n.5, 2375 n.9 (2023) (same); *303 Creative LLC v. Elenis*, 600 U.S. 570, 595–601 nn.3–7 (2023) (same); *Counterman v. Colorado*, 600 U.S. 66, 77–82 nn.4 & 6–7 (2023) (same); *Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122, 131–44 nn.4–10 (2023) (same).

The immigration judge found that Meyers did not satisfy her burden because she admittedly lived at the Pecan Run address, told the department that she lived there when applying for residency, and never told the department that she moved somewhere else. The notices of her removal proceedings (and the actual removal order) were sent to the Pecan Run address by regular mail without ever being returned as undeliverable. And Meyers never challenged the removal order during the six years between when it was

---

Second, the dissenting opinion correctly points out that a party can raise new authorities on appeal in support of a preserved issue. But that's not what happened here. The dissenting opinion raises *In re Anyelo*, not as an additional authority, but as a separate basis to grant Meyers's petition because the board arbitrarily and capriciously failed to follow, or to explain why it didn't follow, *In re Anyelo*. The problem is that Meyers never raised this ground as a basis for granting her petition. And we can't raise it on our own.

Third, the dissenting opinion claims it was undisputed that Meyers never received notice of her removal hearing. But, unlike in *In re Anyelo*, whether Meyers received the notice was very much in dispute. The evidence before the immigration judge showed: Meyers admittedly lived at the Pecan Run address; she applied for residency using the Pecan Run address; she was granted conditional status while living at the Pecan Run address; there was no suggestion she filed a change of address form with the post office; the notice to appear and notice of hearing were sent to the Pecan Run address through regular mail; neither document was returned as undeliverable (as in *In re G-Y-R-*); and Meyers said nothing about her supposedly new address until *six years* after she was ordered removed.

Finally, the dissenting opinion believes we should grant the petition because the board did not give a reasoned explanation for rejecting Meyers' affidavit. But this is yet another issue that Meyers did not raise in her initial brief. And, again, we cannot raise new issues for her.

entered and when she moved for recission.  Based on the situation and claim in this case, the immigration judge's decision was not arbitrary or capricious.  *See Zhang*, 572 F.3d at 1319.

## CONCLUSION

Thus, Meyers's petition for review is **DENIED.**

20-14721                JORDAN, J., Dissenting                1

JORDAN, Circuit Judge, Dissenting.

An immigration judge ordered Luz Meyers removed in absentia, but she contends that she never received the Notice to Appear which advised her of the charges against her or of the pending removal proceeding. This case therefore concerns the statutory notice required by the Immigration and Nationality Act before a removal proceeding against a noncitizen can be conducted in absentia. Fortunately, the BIA addressed and resolved that issue in *In re G-Y-R-*, 23 I. & N. Dec. 181 (BIA 2001) (en banc). *G-Y-R-* holds that "an [i]mmigration [j]udge may not order an alien removed in absentia when the [government] mails the Notice to Appear to the last address it has on file for [the] alien but the record reflects that the alien did not receive the Notice to Appear, and the notice of hearing it contains, and therefore has never been notified of the initiation of removal proceedings or the alien's address [update] obligations under [8 U.S.C. § 1229(a)(1)] of the [INA]." *G-Y-R-*, 23 I. & N. Dec. at 192.[1]

The relevant facts here are the same as those in *G-Y-R-*. I respectfully dissent from the majority's failure to apply *G-Y-R-* and its progeny, specifically *In re Anyelo*, 25 I. & N. Dec. 337 (BIA 2010), which applied *G-Y-R-* in the motion to reopen context. I discuss *G-Y-R-* in detail and then pivot to what happened to Ms. Meyers.

---

[1] The terms noncitizen and alien are largely interchangeable in the immigration context. I use noncitizen, but some of the cases, statutes, and sources cited use the term alien or respondent.

**I**

In *G-Y-R-*, the noncitizen, after entering the United States without inspection, filed a request for asylum in 1982. In 1991, she submitted a form to the government updating her address. Six years later, sometime in 1997, the government mailed an appointment notice to her for an asylum interview. The notice was sent by regular mail to the address she had provided in 1991 (and which she had failed to update). She did not appear for her asylum interview. *See G-Y-R-*, 23 I. & N. Dec. at 182.

In July of 1997, the government sent a Notice to Appear to the noncitizen by certified mail to the address she had provided in 1991. The Notice to Appear was returned undelivered to the government by the U.S. Postal Service. *See id.* When she did not appear for her removal hearing, the government moved to proceed with the hearing in absentia. But the immigration judge refused to do so, explaining that he was not satisfied that the noncitizen was aware of the removal proceeding. The immigration judge terminated the removal proceeding without prejudice. *See id.* His order was sent by certified mail to the same address on file but it was returned to the immigration court with the notation "Moved Left No Address." *See id.*

The government appealed the immigration judge's termination order to the BIA. It argued that the immigration judge should have ordered the noncitizen removed in absentia because the "proper notice of proceedings was effected through 'attempted delivery to the last address provided by the [noncitizen]' pursuant to

. . . [8 U.S.C. § 1229(a)]." *Id.* The government also asserted that 8 U.S.C. § 1305 "places an affirmative duty on the [noncitizen] to keep the Attorney General apprised of her whereabouts or face certain consequences under . . . 8 U.S.C. § 1306[.]" *Id.* at 182–83.

The BIA dismissed the government's appeal for a number of reasons. A summary of its lengthy analysis, which proceeded in the following sequential steps, is necessary to understand why Ms. Meyers' in absentia removal order here cannot stand.

The BIA began by noting that the noncitizen had not been personally served with the Notice to Appear and that she had not received any notice of the removal hearing because the certified mailing had been returned. *See id.* at 183. Given this factual background, the BIA framed the issue as follows: "The issue is whether an [i]mmigration [j]udge may order an alien removed in absentia when the [government] mails the Notice to Appear to the last address it has for an alien, but the record reflects that the alien did not receive the Notice to Appear, and the notice of hearing it contains, and therefore has never been notified of the initiation of removal proceedings or the alien's address [update] obligations under [8 U.S.C. § 1229(a)(1)] of the [INA]." *Id.* After setting out the issue, the BIA provided a number of reasons why removal proceedings could not be conducted in absentia under such circumstances.

First, under 8 U.S.C. § 1229(a)(1)(F)(1), it is the "Notice to Appear [which] apprises the alien that he or she has a particular address obligation respecting removal proceedings: the necessity of

providing an address 'at which the alien may be contacted respecting proceedings under [8 U.S.C. § 1229a].'" *Id*. at 184.

Second, the "alien must be properly served with the Notice to Appear before the particular address obligations of removal proceedings are fixed and the [i]mmigration [j]udge is authorized to proceed in absentia." *Id*. But "if the alien does not actually receive the mailing, . . . the statute [§ 1229(c)] specifies that the sufficiency of service will depend on whether there is 'proof of attempted delivery to the last address provided by the alien *in accordance with subsection (a)(1)(F)*.' Thus, in cases where the alien does not get the mailing, only the use of an address that satisfies [§ 1229(a)(1)(F)] of the [INA] will suffice for the initiation of proceedings." *Id*. at 185 (emphasis in original and citation omitted).

Third, "the critical question for in absentia cases involving mailed notice is whether the notice is mailed to an address that qualifies as an 'address provided under [§ 1229(a)(1)(F)].' If an address does not, then the [i]mmigration [j]udge many not enter an in absentia order of removal because the statutory notice requirement has not been satisfied." *Id*.

Fourth, an "address taken from an asylum application or a change of address form that *accomplishes actual delivery* of the Notice to Appear qualifies as a '[§ 1229(a)(1)(F)]' address because the alien will actually *be* informed of the initiation of removal proceedings and the rights and obligations that attach." *Id*. at 186 (first emphasis added). But when only constructive notice (through, for example, mailing) has been provided, "an address can be a [§

20-14721                    JORDAN, J., Dissenting                    5

1229(a)(1)(F)] address *only* if the alien has first been informed of the particular statutory address obligations associated with removal proceedings and of the consequences of failing to provide a current address. Because that information is first communicated in the Notice to Appear, the alien must receive the Notice to Appear before he or she can 'provide' an address in accordance with [§ 1229(a)(1)(F)] of the [INA]." *Id*. at 187.

Fifth, where the Notice to Appear—and its notification of the in absentia consequences resulting from failure to provide an updated address—do not reach the noncitizen, it is insufficient for the government to have generally advised the noncitizen about the need to update his or her address in another form that does not set out the in absentia consequences. The "intent [of § 1229(a)(1)(F)] is to accomplish actual notice," and the government was wrong to argue that "the notice requirements of the [INA] are satisfied *whenever* the [government] uses the alien's last known address—no matter how old, incomplete, or obviously inadequate that address may be." *Id*. at 189 (emphasis in original). Indeed, "[s]imply mailing the Notice to Appear to an address authorized under [§ 1229(a)(1)] does not automatically convert the alien's last known address into a [§ 1229(a)(1)(F)] address." *Id*. "In short, the notice requirement leading to an in absentia order cannot be satisfied by mailing the Notice to Appear to the last known address of the alien *when the alien does not receive the mailing*." *Id*. (emphasis in original).

Sixth, an "alien can, in certain circumstances, be properly charged with receiving notice, even though he or she did not

6                    JORDAN, J., Dissenting              20-14721

personally see the mailed document.  If, for example, the Notice to Appear reaches the correct address but does not reach the alien through some failure of the internal workings of the household, the alien can be charged with receiving proper notice, and proper service will have been effected.  However, if we know that the Notice to Appear did not reach the alien and that the alien cannot properly be charged with receiving it, then the mailing address does not qualify as a '[§ 1229(a)(1)(F)]' address.  In turn, if the mailing address does not qualify as a [§ 1229(a)(1)(F)] address, then an in absentia order predicated on mailed notice to that address may not ensue."  *Id.* (citation omitted).

Seventh, a noncitizen generally "has an obligation to provide the [government] with a current address pursuant to the registration requirements of the [INA]," and "[v]irtually every alien in the United States is under an affirmative obligation to report address changes to the Attorney General, regardless of immigration status or circumstances."  *Id.* at 190.  Although there are various penalties for failing to update an address, "the entry of an in absentia order of removal is not one of them."  *Id.*  As a result, "the registration provisions [of the INA] do not authorize the issuance of an in absentia order of removal as a consequence of their violation."  *Id.*

Based on these subsidiary conclusions, the BIA in *G-Y-R-* stated its holding this way: "[A]n [i]mmigration [j]udge may not order an alien removed in absentia when the [government] mails the Notice to Appear to the last address it has on file for [the] alien, but the record reflects that the alien did not receive the Notice to

20-14721                JORDAN, J., Dissenting                7

Appear, and the notice of hearing it contains, and therefore has never been notified of the initiation of removal proceedings or the alien's address [update] obligations under [8 U.S.C. § 1229(a)(1)] of the [INA]." *Id*. at 192. *See also* Ira J. Kurzban, Immigration Law Sourcebook 581 (17th ed. 2020) (summarizing *G-Y-R-*: "If the respondent did not receive the NTA and the notice of hearing it contains and therefore was never notified of the initiation of removal proceedings or her address obligations under [§ 1229(a)(1)], the IJ may not enter an *in absentia* order.").

Subsequently, the BIA expressly held that *G-Y-R-* applies with full force in immigration cases arising in the Eleventh Circuit. *See Anyelo*, 25 I. & N. Dec. at 338.[2]

## II

Under 8 U.S.C. § 1229a(b)(5)(C)(ii), an in absentia removal order can be rescinded "if the alien demonstrates that [she] did not receive notice in accordance with [§ 1229(a)(1) or (a)(2)]." As laid out in excruciating detail above, the BIA's decision in *G-Y-R-* sets out

---

[2] We recently held that a noncitizen has proper statutory notice for purposes of in absentia removal under § 1229(a) so long as she receives notice of the missed hearing under *either* subsection 1 (the Notice to Appear) *or* subsection 2 (the Notice of Hearing). *See Dacostagomez-Aguilar v. U.S. Att'y Gen.*, 40 F.4th 1312, 1317–18 (11th Cir. 2022). In doing so, we disagreed with the Ninth Circuit's decision in *Singh v. Garland*, 24 F.4th 1315, 1320 (9th Cir. 2022), *cert. granted*, 143 S.Ct. 2688 (2023) (oral argument held on Jan. 8, 2024). *See* 40 F.4th at 1318 n.3. Ms. Meyers, of course, did not receive notice under any subsection of § 1229(a), so *Dacostagomez-Aguilar* does not control.

what notice is required for an immigration judge to issue a removal order in absentia.

## A

The relevant undisputed facts in Ms. Meyers' case mirror those in *G-Y-R-*:

◆ Like the noncitizen in *G-Y-R-*, Ms. Meyers provided the government with her Pecan Run address in Ocala years before the government initiated removal proceedings against her.

◆ Like the noncitizen in *G-Y-R-*, Ms. Meyers was never warned prior to the mailing of the Notice to Appear that, if she failed to update her address, she could be removed in absentia.

◆ As it did with the noncitizen in *G-Y-R-*, the government sent the Notice to Appear and a Notice of Hearing to Ms. Meyers through regular mail at the Pecan Run address, which was the address it had on file for her. *See* A.R. at 64. The Notice to Appear would have been the first time Ms. Meyers was told that she could be removed in absentia if she did not update her address, but she did not receive the Notice to Appear.

◆ At the time the government mailed the Notice to Appear to her, Ms. Meyers was no longer living at the Pecan Run address. *See* A.R. at 84–85.

◆ Ms. Meyers never received the Notice to Appear, and therefore did not know (a) that she had a pending removal proceeding or (b) that she could be removed in absentia. *See* A.R. at 85.[3]

In his order, the immigration judge first cited *G-Y-R-* for the proposition that "[a]n alien may properly be charged with receiving the [Notice to Appear] even though she did not personally view the document." A.R. at 64. Though this snippet from *G-Y-R-* was accurate, it was woefully incomplete and taken out of context. What the BIA explained in *G-Y-R-* was that "[i]f, for example, the Notice to Appear reaches the correct address but does not reach the alien *through some failure of the internal workings of the household*, the alien can be charged with receiving proper notice, and proper service will have been effected." *G-Y-R-*, 23 I. & N. Dec. at 189 (emphasis added). Nothing like that happened here.

In any event, the BIA made clear in *G-Y-R-* that "if we know that the Notice to Appear did not reach the alien and that the alien cannot properly be charged with receiving it, then the mailing address does not qualify as a [§ 1229(a)(1)(F)] address. In turn, if the mailing address does not qualify as a [§ 1229(a)(1)(F)] address, then an in absentia order predicated on mailed notice to that address may not ensue." *Id.* This case involves the latter scenario, not the former, and the immigration judge erred by failing to realize this

---

[3] The last two facts are set out in Ms. Meyers' unrebutted affidavit. The immigration judge, whose order was summarily affirmed by a single member of the BIA, did not hold an evidentiary hearing and never made a finding discrediting or discounting the affidavit.

critical difference.  Simply stated, Ms. Meyers' Pecan Run address was not a § 1229(a)(1)(F) address under *G-Y-R-* because she was never advised of the in absentia consequences for failing to update her address before the Notice to Appear was mailed to her.  *See id.* at 187–89.[4]

The immigration judge also said that "a properly addressed notice that is sent via regular mail according to normal office procedures is presumed to have been received by the addressee."  A.R. at 64.  The majority relies on this reasoning in its opinion, and points out that Ms. Meyers has the burden of proving non-receipt of the Notice to Appear under § 1229a(b)(5)(C)(ii).  But this analysis is significantly flawed for a number of reasons.

First, the BIA case that establishes the presumption of delivery for documents sent through the U.S. Mail is a case in which— unlike in *G-Y-R-* and unlike the situation here—the noncitizen failed to update his address *after* he was sent a Notice to Appear to his correct address warning him that he could be removed in absentia if he did not update his address, and *after* he appeared at the first removal hearing.  Only in that context did the BIA say that there is a presumption of receipt for *later* mailings like a notice changing the date and location of future hearings.  *See In re M-R-A-*, 24 I. &

_____

[4] The immigration judge cited a number of facts about Ms. Meyers' Pecan Run address which predated the issuance of the Notice to Appear.  Under *G-Y-R-* and *Anyelo*—discussed later—those facts are irrelevant because at that time Ms. Meyers had not been warned that she might be removed in absentia if she did not update her address.  *See G-Y-R-*, 23 I & N. Dec. at 187–89.

N. Dec. 665, 666, 671, 675 (BIA 2008) ("[T]he DHS sent the respondent, by regular mail, a Notice to Appear . . . initiating removal proceedings and setting a removal hearing for August 15, 2006. The respondent appeared for his hearing on that date and received a written notice for his next hearing scheduled for February 20, 2007. . . . In this case, the Notice of Hearing dated November 6, 2006, was sent to the respondent's *current* address, yet he claims that he did not receive it. . . . *Once a respondent has received a Notice to Appear, he must comply with th[e] statutory responsibility [to update his address.]*") (emphasis added). *M-R-A-* therefore does not apply here. *See* Kurzban, Immigration Law Sourcebook, at 713 ("Any notice issued *after the NTA has been received* is sufficient if it is given at the most recent address provided by the respondent.") (emphasis added).

Second, even assuming that the presumption of delivery from *M-R-A-* applies, it is not unrebuttable or conclusive; in fact, it is "weaker than that accorded to notice sent by certified mail." *M-R-A-*, 24 I. & N. Dec. at 673. So "when a respondent seeks to reopen proceedings based on a claim of lack of receipt of notice, the question to be determined is whether the respondent has presented sufficient evidence to overcome the weaker presumption of delivery attached to notice delivered by regular mail." *Id.*

Third, again assuming that *M-R-A-* applies, the BIA in that case explained that an immigration judge may consider a "variety of factors" in determining whether a noncitizen has overcome the weaker presumption of delivery for notices sent by regular mail,

12                    JORDAN, J., Dissenting                    20-14721

and these include but are not limited to "the [noncitizen's] affida-vit[.]" *Id.* at 674.  Here, Ms. Meyers submitted an *unrebutted* affida-vit stating that (a) she did not live at the Pecan Run address when the Notice to Appear was mailed to that address, and (b) she never received the Notice to Appear.  *See* A.R. at 84–85.  The immigration judge, however, did not hold an evidentiary hearing.  Nor did he discount or discredit her affidavit in any way.  That affidavit there-fore stood and constituted unrebutted evidence of non-delivery of the Notice to Appear.  *See* Kurzban, Immigration Law Sourcebook, at 714 ("[W]here the respondent does not receive the NTA which informs her of the change of address requirement, she may assert the lack of notice.") (citing *G-Y-R-*).[5]

### B

The majority makes much of the fact that this case involves a motion to reopen under § 1229(b)(5)(c)(ii), which it says flips the burden to Ms. Meyers.  But in a case just like this one, the BIA is-sued a precedential decision vacating an immigration judge's denial of a motion to reopen an in absentia removal order.  *See Anyelo*, 25 I. & N. Dec. at 339.  In that case, as here, the noncitizen had failed to update his address with the government before he was advised of the in absentia consequences that might result from such a

---

[5] To the extent that the immigration judge refused to consider Ms. Meyers' unrebutted affidavit, or decided to give it no weight without providing an ex-planation, he erred.  *See, e.g., Manning v. Barr*, 954 F.3d 477, 486 (2d Cir. 2020) ("[W]e find error in the IJ's and BIA's failure to consider the unrebutted expert affidavit of Dr. Harriott, which we assume to be credible.").

20-14721                JORDAN, J., Dissenting                13

failure.  The government therefore mailed a Notice to Appear to the old address it had on file.  The noncitizen understandably did not appear, and he was removed in absentia.  When he moved to reopen, the noncitizen submitted an unrebutted affidavit stating that he did not live at the address where the Notice to Appear was mailed, and that as a result he did not receive the Notice to Appear.  The immigration judge denied the motion to reopen.  Finding *G-Y-R-* controlling, the BIA disagreed with the immigration judge and granted the noncitizen's appeal.  Here's how the BIA explained its decision:

> It is undisputed that the respondent did not receive the Notice to Appear, even though it was sent to his last known address, and that he did not update the DHS with his current mailing address after he moved in 2008.  Notwithstanding, the respondent cannot be charged with getting adequate notice under *Matter of G-Y-R-*, because he did not receive the Notice to Appear containing the required warnings and advisals instructing him as to his obligations to advise the Attorney General (not merely the post office) of any change of address.  *Matter of G-Y-R-* therefore controls.  Accordingly, the respondent's appeal will be sustained, and the record will be remanded to the [i]mmigration [j]udge for further proceedings.

*Id.*

In Ms. Meyers' case, the immigration judge and the BIA did not cite, much less discuss, *Anyelo* and its application of *G-Y-R-* in the motion to reopen context.  That constitutes fatal error.

The majority relegates *Anyelo* to a footnote, and makes three attempts to argue it away. None are satisfactory.

First, the majority says that Ms. Meyers did not raise *Anyelo* in her initial brief and has therefore forfeited it. This is simply wrong. Ms. Meyers has always argued that under *G-Y-R-* her in absentia removal order cannot stand because she never received the Notice to Appear, *see* Petitioner's Br. at 11–24, and *Anyelo* is simply an application of *G-Y-R-* in the motion to reopen context. We must therefore apply *Anyelo*. As our sister circuits have explained, a party can raise new authorities on appeal in support of a preserved issue. *See, e.g., Templeton v. Jarmillo*, 28 F.4th 618, 622 (5th Cir. 2022) ("A new precedent is not a new argument; it is support for an existing argument."); *Alston v. Town of Brookline*, 997 F.3d 23, 44 (1st Cir. 2021) ("Whether or not an issue is preserved in the trial court does not depend on what authorities the arguing party cites to that court."); *United States v. Rapone*, 131 F.3d 188, 197 (D.C. Cir. 1997) ("Whether Rapone was entitled to a jury trial is a question of law that we review *de novo*, and we do not think it appropriate to ignore relevant legal authority simply because it was not considered in the court below."). And when an appellate court tries to answer legal questions, it "should . . . use its 'full knowledge of its own [and other relevant] precedents.'" *Elder v. Holloway*, 510 U.S. 510, 516 (1994) (citation omitted) (holding that an appellate court addressing qualified immunity is not limited to the authorities cited in the district court). A contrary rule "could occasion appellate affirmation of incorrect legal results[.]" *Id.* at 515 n.3. *See also Templeton*, 28 F.4th at 622 ("[T]his court is not restricted to analyzing the issues

20-14721                    JORDAN, J., Dissenting                    15

properly presented only on the authorities cited by the parties."); *Martin v. United States*, 1996 WL 708376, at *1 (7th Cir. Dec. 4, 1996) ("[A] court is not restricted to the cases the parties discuss."). The majority cannot ignore *Anyelo*.

Second, the majority relies on one of our unpublished cases, *Sun v. U.S. Att'y Gen.*, 543 F. App'x 987 (11th Cir. 2013), to distinguish Ms. Meyers' case from *G-Y-R* and *Anyelo*. But if we are going to cite unpublished cases, I would instead rely on a much more recent decision where we correctly noted, that under *Anyelo*, "if [the noncitizen] had begun receiving mail at another address but failed to notify the government of her change of address, it appears that she could not be charged with receiving notice under BIA precedent." *Tomas v. U.S. Att'y Gen.*, 2021 WL 3910275, at *3 n.2. (11th Cir. Sept. 1, 2021).

Third, the majority says that "whether [Ms.] Meyers received notice was disputed" and that the immigration judge applied "*In re M-R-A-* to resolve [that] factual dispute." That would be a great point if it were only true. The reality, however, is that there was no factual dispute to resolve. Ms. Meyers' filed an affidavit stating that she had long since moved from the Pecan Run address and thus did not receive the Notice to Appear or the Notice of Hearing. Significantly, the government did not dispute the veracity of her affidavit. It instead argued that Ms. Meyers could nonetheless be removed in absentia because she had an obligation to keep her address updated as an applicant for permanent residency. *See* A.R. 69. As I have explained, that is plainly wrong under *G-Y-R-* and *Anyelo*—absent

service of a Notice to Appear, a noncitizen cannot be removed in absentia for failing to update her address. The immigration judge, without passing on Ms. Meyers' affidavit, simply and improperly adopted the government's legally erroneous reasoning.

We should remand for the immigration judge to consider Ms. Meyers' affidavit. That is what we did in *Tomas*, 2021 WL 3910275, at *4 ("Neither the [immigration judge] nor the BIA discounted the affidavits from Tomas or her brother, nor did they discuss or weigh Tomas's prior affirmative application for relief. By basing the denial of Tomas's motion to reopen solely on one nondispositive factor, the [immigration judge] and BIA, without any reasoned explanation, failed to apply BIA precedent requiring consideration of 'all relevant evidence' of the 'particular circumstances.'"). *See also Hernandez v. Lynch*, 825 F.3d 266, 271–72 (5th Cir. 2016) ("Because the BIA concluded that [Mr.] Torres Hernandez failed to rebut the presumption of notice without considering all relevant evidence, it abused its discretion in denying [his] motion to reopen."). Though an immigration judge "need not address specifically . . . each piece of evidence," it is clear here that the immigration judge failed to provide a "reasoned explanation" as to why *G-Y-R-* did not apply in light of Ms. Meyers' unrebutted affidavit. *See Bing Quan Lin v. U.S. Att'y Gen.*, 881 F.3d 860, 874 (11th Cir. 2018).

## III

The rule laid out by the immigration judge and the BIA in this case is that the mailing of a Notice to Appear to the

noncitizen's last known (and provided) address permits an in absentia removal proceeding (a) even though the noncitizen has not been previously advised that in absentia removal can result if she does not update her address, and (b) even though the noncitizen never actually receives the Notice to Appear containing that warning because she is no longer living at the old address. This is exactly what *G-Y-R-* expressly rejected: "[A]n address can be a [§ 1229(a)(1)(F)] address *only* if the alien has first been informed of the particular statutory address obligations associated with removal proceedings and of the consequences of failing to provide a current address. Because that information is first communicated in the Notice to Appear, the alien must receive the Notice to Appear before he or she can 'provide' an address in accordance with [§ 1229(a)(1)(F)] of the [INA]." *G-Y-R-*, 23 I. & N. Dec. at 187 (emphasis in original). And if any further clarity were needed, the BIA applied *G-Y-R-* in *Anyelo*, 25 I. & N. Dec. at 339, which is identical to Ms. Meyers' case in all relevant respects and which similarly arose in the motion to reopen context.

Put another way, the BIA's decision in this case amounts to an arbitrary and capricious departure from *G-Y-R-* and *Anyelo*. In the world of administrative law, an agency must generally follow its rules and precedents or must explain its departures from them. *See N.L.R.B. v. Sunnyland Packing Co.*, 557 F.2d 1157, 1160 (5th Cir. 1977) ("[A]n agency must either conform itself to its own prior decisions or else explain the reason for its departure."). And that principle applies with full force to the BIA, as we recently explained in *Zarate v. U.S. Att'y. Gen.*, 26 F.4th 1196, 1207–08 (11th Cir. 2022).

18                    JORDAN, J., Dissenting                    20-14721

Setting aside a BIA decision which had failed to follow earlier BIA precedent, we held in *Zarate* that "an agency is generally required to 'follow its own procedure' when the 'rights of individuals are affected.' In fact, we have found that '[t]he BIA can . . . abuse its discretion by not following its own precedents without providing a reasoned explanation for doing so.'" *Id.* (citations omitted).

I would grant Ms. Meyers' petition for review and remand the case to the BIA with instructions that it correctly apply *G-Y-R-* and *Anyelo*.